**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TRESÓNA MULTIMEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 15 C 4834 |
| | ) | |
| DAVID LEGG, JANE DOE LEGG, | ) | |
| CUSTOM ARRANGEMENTS LLC, | ) | |
| ANITA CRACAUER, DAVID DALE | ) | |
| CRACAUER, JOHN and JANE DOES, | ) | |
| I-X and XYZ ENTITIES I-V, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| BROCK KEIPER, | ) | |
| Discovery Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Before the Court is Discovery Respondent Brock Keiper's ("Keiper's") Motion to Quash Nonparty Subpoena served on him by Plaintiff Tresóna Multimedia LLC ("Tresóna"). (*See* R.6.) For the reasons set forth below, the Court grants Keiper's motion.[1]

## BACKGROUND

Tresóna is the plaintiff in an action pending in the U.S. District Court for Arizona, No. CV-14-02141-PHX-DGC (the "Underlying Action"). Tresóna originally filed the Underlying Action against David Legg and Jane Doe Legg; Custom Arrangements LLC ("Custom Arrangements" or "CALLC"); Anita Cracauer ("Cracauer") and David Dale Craucauer; John and

---

[1] The Court's ruling herein on Keiper's Motion to Quash Nonparty Subpoena (R.6) expresses no opinion as to the merits of the Underlying Action between Tresóna and the Defendants.

Jane Does I-X and XYZ Entities I-V (collectively "Defendants") in the Superior Court of Maricopa County, Arizona. (*See* R.7-1, Ex. D, Compl., *Tresóna v. Legg*, Case No. CV2014-095345.) The case was later removed to the U.S. District Court for Arizona based on the presence of a federal cause of action. (*See* R.7-1, Ex. E, *Tresóna v. Legg*, No. CV-14-02141-PHX-DGC, 2015 WL 470228 (D. Ariz. Feb. 4, 2015).) Tresóna's allegations in the Underlying Action included breach of contract (Count I), intentional interference with contract (Count II), intentional interference with business expectancy (Count III), violation of Lanham Act (Count IV), liability under piercing of corporate veil (Count V), and conspiracy (Count VI). (*Id.*) Upon the district court's grant of the Defendants' motion to dismiss, only Tresóna's allegations of breach of contract, interference with contract, interference with business expectancy, and violation of the Lanham Act remain. (*Id.*, at *1, *7-11.) A brief summary of the facts in the Underlying Action provides context for this motion.

Tresóna is a music copyright licensing company registered in the State of Arizona. *Tresóna*, 2015 WL 470228, at *1. Tresóna owns a website that sells custom music arrangement licenses that allow the purchaser to arrange a piece of music for a client—e.g., a music organization of a "show choir". *Id.* Defendant David Legg ("Legg") applied for a custom arrangement license for a song and signed a "Work for Hire Agreement" with Tresóna. (*Id.*) Tresóna alleges that Defendant Custom Arrangements has a history of contacting Tresóna's customers and informing them that Custom Arrangements can sell arrangements licensed by Tresóna. (*Id.*) Defendant Cracauer owns and operates Custom Arrangements. (*Id.*) Tresóna further claims that Custom Arrangements falsely advertises its ability to grant exclusive rights to particular arrangements, when in fact those arrangements have been licensed by other companies. (*Id.*) Tresóna alleges that Custom Arrangements told Legg that it had permission to

sell Legg's arrangements produced under the custom arrangement license with Tresóna and thereby induced Legg to breach his contract. (*Id.*)

Discovery is open in the Underlying Action and Tresóna has, among other things, served document requests on Defendant Custom Arrangements. (R.7-1, Ex. F, Pl's First Set of Production Requests to Def. CALLC.) Tresóna has also served third-party subpoenas on a number of music arrangers, including Keiper. Tresóna argues that the alleged scheme orchestrated by Custom Arrangements and Cracauer "only came to light because other third-party witnesses responded to their subpoenas duces tecum." (R.15, at 4.) Tresóna served subpoenas upon Eric Van Cleave, an arranger that it alleges works closely with Custom Arrangements, "anticipating that [Custom Arrangements] might not voluntarily disclose incriminating documents, and hoping to get a complete picture". (*See* R.15-2, Ex. A, Greenburg Decl., ¶¶ 12. 13; *id.*, Ex. Y, Van Cleave Subpoena; *id.*, Ex. Z, Affidavit of Service for Van Cleave.) Tresóna requested documents from Van Cleave that it also requested from Custom Arrangements and claims that Van Cleave "produced many more responsive documents" that were "highly informative and incriminatory" to Custom Arrangements. (R.15-2, Ex. A, ¶ 15; R.15, at 5.) As such, Tresóna contends that the documents commanded from Keiper "are necessary to uncover crucial evidence to the case." (R.15, at 6.)

Tresóna originally served Keiper with a subpoena on May 13, 2015 (the "original subpoena"). (*See* R.7-1, Ex. A, Keiper Decl., ¶ 2; R.7-1, Ex. B, Tresóna Subpoena to Keiper, May 8, 2015.) Keiper objected to the original subpoena and because Keiper and Tresóna were unable to resolve their disagreement, Keiper filed a Motion to Quash on June 1, 2015. (*See* R.1.) After subsequent correspondence, Keiper and Tresóna agreed to having Tresóna issue a modified subpoena which Keiper's counsel would accept for service via email, designating Chicago as the

site for production and maintaining Keiper's remaining objections.  (*See* R.7-1, Ex. C, May 22, 2015 Email Correspondence.)  Tresóna issued a modified subpoena on June 12, 2015 and served it on Keiper's counsel via email on June 13, 2015 (the "modified subpoena").  (*See* R.7-1, Ex. G, Tresóna Subpoena to Keiper, June 12, 2015.)  Keiper asserts that the categories of documents sought by the modified subpoena are unchanged from the original subpoena and has again moved the Court to quash the modified subpoena.

Specifically, Tresóna commands the production of documents from Keiper related to Custom Arrangments and/or Cracauer, including various contracts between Keiper and Custom Arrangements and/or Cracauer, Keiper's musical arrangements licensed or sold through Custom Arrangements and/or Cracauer, prohibitions from distribution of musical arrangements originally licensed through Tresóna to Custom Arrangements and/or Cracauer, and compensation Keiper received form Custom Arrangements and/or Cracauer for arrangements provided to or sold through them.  (*See* Subpoena Category Nos. 1-3, 5; *see also id.*, Nos. 4, 7, 9-11.)   Tresóna further commands documents with no direct relation to Custom Arrangements or Cracauer.  Tresóna commands, for example, all correspondence between Keiper and other music arrangers, school representatives, or clients that relates "in any way to musical arrangements licensed through Tresóna", as well as correspondence relating "in any way" to whether Keiper or other music arrangers, school representatives or clients "were/are prohibited from publishing musical arrangements licensed through Tresóna." (*See* Subpoena Category Nos. 6, 8; *see also id.*, Nos. 13-17.)  Keiper moves to quash, as duplicative, Categories 1-13, and 17 and specifically requests that the Court quash Categories 1-5 and 10-12 in their entirety and quash the remaining requests (6-9, 13 and 17) to the extent they seek information available from Custom Arrangements and

other parties to the Underlying Action. (*See* R.7, at 5.) Keiper further requests the Court quash, as overbroad, irrelevant, or burdensome, Categories 6-10 and 13-17. (*See* R.7, at 8-9.)

**LEGAL STANDARD**

The Federal Rules of Civil Procedure provide that a court shall quash or modify a subpoena if it subjects a person to undue burden. Fed. R. Civ. Proc. 45(d)(3)(iv). When determining if a burden is undue, the court must ask whether "the burden of compliance with [the subpoena] would exceed the benefit of production of the material sought by it". *Northwestern Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 927 (7th Cir. 2004). Non-party status "is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue." *Parker v. Four Seasons Hotels, Ltd.*, 291 F.R.D. 181, 188 (N.D. Ill. 2013) (*citing Robinson v. Morgan Stanley,* No. 6 C 5158, 2010 WL 1005736 at *2–3 (N.D. Ill. Mar. 17, 2010)). Because of the different expectations for non-parties in accepting the burdens of litigation, "courts give special weight to the unwanted burdens thrust upon non-parties when balancing competing needs." *Id.* In doing so, courts consider various factors, including "the person's status as a non-party, the relevance of the discovery sought, the subpoenaing party's need for the documents, the breadth of the request and the burden imposed on the subpoenaed party." *Id.* (citations omitted). The party seeking to quash a subpoena bears the burden of establishing Rule 45(d)(3)(iv)'s requirements. *See Pacific Century Int'l, Ltd. v. Does 1-*27, 282 F.R.D. 189, 193 (N.D. Ill. 2012).

A district court may also quash or modify a subpoena if it seeks discovery that is "unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; [or] the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought." Fed. R. Civ. Proc.

5

26(b)(2). Motions to quash are within the sound discretion of the district court. *See Griffin v. Foley*, 542 F.3d 209, 223 (7th Cir. 2008); *see also Wollenburg v. Comtech Mfg. Co.*, 201 F.3d 973, 977 (7th Cir. 2000) (*citing U.S. v. Ashman*, 979 F.2d 469, 495 (7th Cir. 1992)).

**ANALYSIS**

Keiper moves the Court to quash the modified subpoena because it is (i) duplicative to discovery requests served on a party in the Underlying Action, and (ii) overbroad, unduly burdensome, and seeks irrelevant information. The Court addresses each argument herein.

**I.     Plaintiff's Modified Subpoena Is Duplicative of Pending Discovery Requests**

Keiper argues that the subpoena seeks duplicative information and points to specific production requests from the Nonparty Subpoena (Categories 1-11, 13, and 17) and their corresponding production requests already served upon Defendant Custom Arrangements. (*See* R.7, at 5.) Tresóna concedes that the documents commanded from Keiper, "for the most part, were also requested from [Custom Arrangements]". (R.15, at 7.) Despite admitting the duplicative nature of the subpoena requests, Tresóna argues that discovery from Keiper is permissible because Tresóna's attempts to obtain discovery from Defendant Custom Arrangements have been unsuccessful due to Custom Arrangements' alleged improper withholding of requested documents. The Court disagrees.

A non-party subpoena seeking information that is readily available from a party through discovery may be quashed as duplicative or cumulative. *See* Fed. R. Civ. Proc. 26(b)(2); *see also Parker*, 291 F.R.D. at 188 (quashing the plaintiff's subpoena served upon a non-party because either the documents sought were duplicative of discovery requests directed to the defendant or the requests were invalid as overly broad, burdensome, irrelevant or previously could have been the subject of discovery); *Ameritox, Ltd. v. Millennium Labs, Inc.*, No. 12-cv-

7493, 2012 WL 6568226, at *2-3 (N.D. Ill. Dec. 14, 2012) (granting a motion to quash nonparty subpoenas "because the requests are cumulative and duplicative of discovery requests made to the party to the litigation"). Tresóna's argument that Custom Arrangements allegedly failed to comply does not remedy the situation. A plaintiff does not demonstrate a compelling need to seek duplicative third-party requests simply because a party in the underlying action fails to comply with document requests for the same information. *See In re Heartland Inst.*, No. 11 C 2240, 2011 WL 1839482, at *4 (N.D. Ill. May 13, 2011) (granting third-parties' motion to quash a subpoena because other reasonable sources existed for the plaintiff to obtain the information via document requests to the defendants in the underlying action for the same information went unanswered). Tresóna seeks non-party subpoena requests "hoping to get a complete picture" of the alleged scheme Custom Arrangements is running. (*See* R.15-2, Greenburg Decl., ¶ 13.) Tresóna, however, does not assert, nor does it provide evidence to support, that it has or will pursue a remedy against Custom Arrangements for any alleged improper actions in withholding incriminating documents that fall within the scope of proper outstanding discovery requests. The parties' conduct in the Underlying Action and the proper scope of discovery is not for the Court to consider here as it is within the jurisdiction of the District Court in Arizona. *See In re Heartland*, 2011 WL 1839482, at *4 (explaining that rulings on discovery disputes are within the exclusive jurisdiction of the court where the underlying action is pending). As such, the record before the Court demonstrates that Tresóna has not exercised reasonable diligence in pursuing the desired information from Custom Arrangements, the least intrusive means of obtaining the information in the Underlying Action. *See* Fed. R. Civ. P. 26(b)(2)(C)(i) (permitting limitation of discovery that "can be obtained from some other source that is more convenient, less burdensome, or less expensive"). Keiper, therefore, has met his burden as a non-party.

Tresóna relies on *Kodish v. Oakbrook Terrace Fire Protection Dist.*, 235 F.R.D. 447 (N.D. Ill. 2006), to support its position that discovery from Keiper is permissible in light of Custom Arrangements' alleged withholdings. This case is inapplicable to the situation here, however, because *Kodish* does not address non-party discovery since the plaintiff requested the desired audiotapes from the defendant. *See Kodish,* 235 F.R.D. at 449. Tresóna argues that "CALLC's communications to arrangers, its contractual rights, and amounts paid arrangers are essential to Tresóna's claims." (R.15, at 7.) These communications, however, are not unavailable from another source, as Tresóna contends. Indeed, Custom Arrangements—a defendant in the Underlying Action—should have its own communications. Arguing that Custom Arrangements is unable to produce the requested documents is different than asserting that Custom Arrangments should have produced the requested documents but failed to do so. Tresóna attempts to do both here. While the discovery process may allow Tresóna to acquire these documents for the Underlying Action, the discovery process of non-party subpoenas does not automatically allow them to acquire these documents from Keiper. Put differently, even if information from Keiper would assist in the exploration of a material issue in the case, Keiper—a non-party—is entitled to greater protection in the discovery process than parties in the litigation. *See Ameritox*, 2012 WL 6568226, at *3 (*citing Thayer v. Chiczewski*, 257 F.R.D. 466, 469 (N.D. Ill. 2009)); *see also Robinson*, 2010 WL 1005736, at *3 (internal citations omitted) ("It is one thing to subject *parties* to the trials and tribulations of discovery-rightly regarded as 'the bane of modern litigation,' but [a non-party] doesn't have a horse in [the] race"). Accordingly, the Court quashes Tresóna's subpoena Categories 1-5 and 10-12 in their entirety as duplicative and cumulative of discovery requests already made upon a party in the Underlying Action. *See* Fed. R. Civ. Proc. 26(b)(2). The Court further quashes Categories 6-9, 13 and 17 to

the extent they seek information available from Custom Arrangements and other parties to the Underlying Action. (*See* R.7, at 5.)

## II. Plaintiff's Modified Subpoena Is Overbroad and Irrelevant

The Court further quashes subpoena Categories 6-10 and 13-17 in their entirety as overbroad or irrelevant. The only claims at issue in this case are breach of contract, interference with contract, interference with business expectancy, and violation of the Lanham Act. These claims are not alleged against Keiper, but rather they are alleged against Legg, a music arranger, and Custom Arrangements. Subpoena Categories 6, 8, and 13-17 have no direct relationship to Custom Arrangements and generally relate to correspondence regarding musical arrangements licensed through Tresóna and any prohibitions on publishing related to those musical arrangements. The requests sweep too broadly, however, seeking "[a]ll correspondence, letters, emails, faxes and/or communication" between Keiper and school representatives, any clients, and three named arrangers—only one of whom is a defendant in the Underlying Action (Legg). Subpoena Categories 13-17 have no direct relationship to any named party in the Underlying Action and appear to infringe upon any and all correspondence Keiper has ever had with other non-parties regarding Tresóna and its products or anyone associated with Tresóna. (*See* R.7-1, Ex. G, Subpoena Nos. 13-17.) Indeed, one request generally seeks "all correspondence, letters, emails, faxes and/or other communication to or from [Keiper] and any other person(s), or otherwise in [Keiper's] possession, relating to educational use of copyrighted works and mechanical and/or compulsory licenses." (*See id.*, Subpoena No. 13.) This request would require Keiper to disclose any mechanical and/or compulsory license that he has, regardless of any connection to Custom Arrangements or Cracauer. Tresóna's reference to "mechanical license" echoes the term as used by Custom Arrangements in an email advising music teachers to

9

avoid getting custom arrangement licenses and avoid significant costs to rightsholders. (*See* R.15, at 12.) These requests are overbroad and, as discussed above, Tresóna does not provide a basis for why it cannot obtain this (and other potentially similar) emails from Custom Arrangements though the litigation discovery process. The Court, therefore, quashes the subpoena as to these categories.

For the same reasons, the Court also quashes the remaining Subpoena Categories 7, 9, and 10. These requests are broadly directed to a non-party, include communications between non-parties, and rely on information from Custom Arrangements and Cracuaer and their agreements or understanding of agreements—information that is relevant to and should be pursued from the Defendants in the Underlying Action. Category 7 broadly seeks Keiper's communications with anyone "that relate in any way" to musical arrangements licensed through Custom Arrangements or musical arrangers' deals with Custom Arrangements. (*See* R.7-1, Ex. G, Subpoena No. 7.) Similarly, Category 9 broadly seeks Keiper's communications with anyone "that relate in any way" to what Custom Arrangements and/or Cracauer's "agreements, arrangements, or understandings with Hal Leonard were/are" and to the compensation for the musical arrangers. (*Id.*, Subpoena No. 9.) Category 10 seeks "all documents relating to an agreement and/or understanding between CALLC and/or [Craucauer] and Hal Leonard Corporation …". (*Id.*, Subpoena No. 10.) These categories are overbroad and seek irrelevant information. Categories 7 and 9, for example, contain no limitations on the individual recipients of Keiper's communications and Categories 9 and 10 rely on Keiper's knowledge of the understanding or agreements between other non-parties and the Defendants in the Underlying Action. Accordingly, the Court further quashes Subpoena Categories 6-10 and 13-17 in their entirety.

10

Tresóna argues that Keiper's assertion that "it would take him the better part of a week to collect all 1000-2000 documents" is insufficient to establish an undue burden. Because of the different expectations for non-parties in accepting the burdens of litigation, however, "courts give special weight to the unwanted burdens thrust upon non-parties when balancing competing needs." *Parker*, 291 F.R.D. at 188. In doing so, courts consider various factors, including "the person's status as a non-party, the relevance of the discovery sought, the subpoenaing party's need for the documents, the breadth of the request and the burden imposed on the subpoenaed party." *Id.* (citations omitted); *see e.g., Ameritox*, 2012 WL 6568226, at *2-3 (granting a non-party's motion to quash subpoenas as cumulative and duplicative, even though the district court denied the motion to quash on the sole basis of undue burden). As discussed above, Tresóna has failed to establish a compelling need for documents from Keiper that it has requested or could request from the Defendants in the Underlying Action—namely, Legg and Custom Arrangements. Furthermore Tresóna's requests impose a undue burden of litigation on a non-party because they are overbroad and include irrelevant information. Accordingly, Keiper has established that production of the requested documents in this case imposes an undue burden.

## CONCLUSION

For the forgoing reasons, the Court grants Discovery Respondent Keiper's Motion to Quash Nonparty Subpoena.

**DATED: August 17, 2015**　　　　　　　　　　ENTERED

　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　AMY J. ST. EVE
　　　　　　　　　　　　　　　　　　　　　　United States District Court Judge